19-3506 and 19-4378. Mr. Press. Thank you, Your Honor. May it please the Court. I'm Alan Press, and I represent the appellants in these cases. Although there are many issues, I believe there's one fundamental issue that should control both cases, and that is the bankruptcy judge's fundamental error in finding that the seniority placements of the former TWA pilots in 2001, in finding those placements, are sacrosanct and must exist forever, apparently. The bankruptcy judge was wrong about that for two very In doing so, he abrogated the seniority list. And so the union was working from a blank slate, the union being APA, working then from a blank slate. There was no seniority. This Court has held in the International Union case that seniority is not a vested right. It is wholly a creation of the collective bargaining agreement and does not exist apart from that agreement. The incidence of seniority can be freely altered or amended by modification of the collective agreement. So here, once the CBA was abrogated in bankruptcy, there was no agreement, there was no APA didn't do that. It simply used the old seniority list that had been abrogated and applied it and imposed it on the pilot group, including my clients. But without the protections that came with Supplement CC, which was the recognized by APA and the industry-wide to be a completely, horribly unfair seniority list. They recreated that, but without the job protections that were said to be integral to the list. And so, judges, the case law is clear that APA clearly had the ability, and in this case, it had the obligation to adjust the TWA pilot seniority placements. It had an obligation to do that. I cite principally the case of ZAP out of the Seventh Circuit. In that case, it's nearly identical to railroad case, and there was a big consolidation of railroads in the northeast by ConAir – or ConRail, sorry. And one of those was a small carrier at which the plaintiffs worked. It was the Indianapolis Union Line. So as part of the seniority. But their jobs on the Indianapolis Line were protected, just like the TWA pilots' jobs in St. Louis were protected. But subsequent to the seniority integration, the employer, ConRail, closed the Indianapolis Line. And at that point, it formulated its duty of fair representation in not attempting to alter seniority. Judge Treslaval, do you have any questions? Not at the moment. Judge Kearse? No, thank you. You can continue, Mr. Press. Thank you, Judge. So that's what we have here. The basis, the underlying basis and foundation for the seniority integration back in 2001 was gone. It's gone. And so at that point, the union had an obligation, a duty to make the seniority fair. And like I said, they were working from a blank slate. They could have done anything to remediate the effect of the prior integration. And so that's the first case. Well, that actually is Krakowski 2. So the union breaching the duty of fair representation and failing to make a new seniority integration. Counselor, it seems to me that with respect to this issue of seniority, the union was in an impossible situation because the union represented the American Airlines legacy pilots, and it represented the TWA pilots. And anything that the union advocated for that would improve the lot of one set would come out of the pockets of the other set. So the union, I mean, to the extent that the union made arguments favoring the TWA pilots, it would be betraying its obligations to the AA pilots and vice versa. So the union, as I understand it in the arbitration, simply took a neutral role and sat still and waited for the appointment of a committee representing the TWA pilots and another representing the American Airlines pilots and let them participate to argue to the arbitrators on opposite sides. So the union would not be in a position that by whatever advocacy it did for one set over the other, it would be violating its rights towards one group or the other. Why is that a breach of the duty of fair representation? My answer is several-parted. First of all, the Supreme Court in Humphrey v. Moore recognized that there's conflict. Unions are constantly presented with these conflicts. It's nothing new. And it held that a union should not be neutralized when the issue is chiefly between two sets of employees. In that case was seniority integration, and the union did not advocate its duty to members of its union. It decided the issue, but they had to do it honestly and in good faith, and that's what they did. And the union was not found to be liable. So yes, the union is in that position, but again, that's not something unique to this case. But here, what they did with their conflict, they tied the hands of the arbitrators before the process even started by telling – by agreeing that the in any seniority arbitration, and most of the litigations that we see that talk about these issues, judges, they come out of the seniority integration arbitrations and the seniority integration process. Now, these seniority integration arbitrations, there's no limitation like that given to the arbitrators. In fact, they're given free will to do what they think is fair and equitable. That's the standard under the new law, the McCaskill bond law. That is the standard, which was the old standard under the Civil Aeronautics Board. But we didn't have that here. These judges had their hands tied. They couldn't do what they felt was just. They had to follow the rules that were given to them. So the union's – APA's position of being in a conflict, Judge, I don't think that gives them a free pass to do what they did in this case. Judge Kearse, do you have any questions? No, thank you. Mr. Press, the arbitrators' understanding, as I think you just articulated, that the union put one limitation on that, on what the arbitrators could do. There were any number of arguments that Mr. Gaber, the representative for your client, could have made and did make to the arbitrators. And why is it that we can't just view the record as, in essence, the arbitrators rejecting those? Okay. So at the beginning of the arbitration hearing, we had this notion of, well, we're going to replicate the job protections in St. Louis. We're going to replicate those somehow fairly throughout the American system. Well, that had been the stated goal of the arbitration from the moment that the idea was conceived, at least as represented to Mr. Gabel and the bankruptcy court and amongst themselves when they were discussing how we're going to draw up this letter agreement. Well, as soon as the process started, the hearing started, they reneged on that, and America's lawyer said replication is not the standard. So APA's lawyer was in the room. He heard that. Instead of responding and correcting that record, he sat silent. And so the arbitrators were left with really no conclusion but to believe that replication is not the standard. So going into the arbitration, we know that the arbitrators are now – they're being called upon to do something that decreases Supplement CC benefits to the PLA process. We're not going to replicate them. We're going to do something worse. So that is a new rule that they imposed. So now they can't adjust seniority. They can't replicate Supplement CC, and they're left with this totally ambiguous standard that we're going to impose alternative contractual rights. So – And then your argument is that that was in part as a result of the failure of APA, the APA representative, to speak up at a specific point. Absolutely. APA's general counsel judge, yes. Right. Okay. I mean, everything that had been told to the TWA politics was just chucked out the window in one minute. Unless there are any further questions –   Participation in reaching agreement, that document, that that was a breach of the duty of fair representation? In agreeing to the limitation on modification of seniority, yes. Well, I mean, but there were provisions in that that favored the TWA pilots and others that disfavored the TWA pilots, right? I don't know what provisions favored the TWA pilots. The union had agreed that the company could close the base in St. Louis. And now instead of – so we're going to find some way to give you something to substitute what you had in St. Louis. Well, I mean, LOA 1205 set up arbitration that could provide preferential flying rights similar to those that had been – that TWA pilots enjoyed at St. Louis. Yes, Judge, I can't disagree with that. That's what it says. But that's not what happened. We know that. And the way this was set up by APA and American almost compelled that result. Okay. Miss – you've reserved two minutes for rebuttal, Mr. Kress, so we'll hear from Mr. Rosenthal on the other side. Okay. Thank you, Judge. Thank you. Good morning. May it please the Court. This is Daniel Rosenthal representing the Allied Pilots Association. The issue of plaintiff's job protections in light of the abrogation of the collective bargaining agreement was a difficult issue which presented conflicting interests within the bargaining unit. APA submitted it to three highly qualified arbitrators who decided what they thought would be an equitable outcome for the former TWA pilots. And their decision is in the record and can be reviewed by the Court. Since then, the fairness and appropriateness of that process has been before a bankruptcy judge and two district court judges. And each of these six decision makers, the three arbitrators and the three judges, have rejected plaintiff's arguments. And this Court should reach the same result. As to Krakowski 1, which is the case that mainly challenges the procedures of the arbitration as opposed to the seniority limitation, I'd like to particularly highlight the causation issue because I think it's dispositive. To avoid summary judgment, the plaintiffs needed to create a material dispute of fact as to whether these various aspects of the process that they complain about actually cause the harm, which is, in their view, the unfair arbitration result. This rule prevents a plaintiff from obtaining relief in a case like this unless the union's conduct actually made a difference to the outcome. But plaintiffs offered really no evidence to the bankruptcy court that this arbitration would have turned out more favorably if APA had done any of these things that they say APA should have done, such as have its general counsel make a statement about the standard or something to that effect. So I think the bankruptcy court was correct to find that that lack of evidence made it impossible for the plaintiffs to proceed. Now, as to Krakowski 2, which is the case focusing on the seniority limitation, this court's decisions in harem and flight attendants in reunion should resolve this case because both of those cases rejected arguments that a union had to revisit a seniority list that had previously been arranged and that employees were relying on. And we think that, especially when you view this through the lens of the highly deferential standard that applies in a DFR case, which means that the court is not deciding what it would have done or what would have been the most fair, but simply whether there was some reasonable justification. It is entirely reasonable to say that once there's been a seniority list that employees have been relying on for 10 years, we're not going to upend that. And instead, in this case, APA determined that the loss of protections, which was really what had arisen during the bankruptcy process, could be replaced through a different method, which was the registration. Judge LaValle, do you have any questions? So, what do you say in response to the argument that your adversary made just at the end of his argument, that by agreeing to LOA 1205, the union essentially froze the seniority situation from arbitration and essentially agreed to barring arbitrators from reaching a different solution as to arbitration. And that was a breach of the duty of fair representation. Yes. APA responded to the situation. So, this was in the context of a bankruptcy in which American claimed against APA's opposition, I should mention, that it needed to close the St. Louis base in order to save money to help it reorganize. And so, it proposed closing the base, which necessitated the elimination of these protections. So, in that context, it was entirely reasonable in our view for APA to say, Americans threatening to take away these protections were going to replace the protections. American was not threatening to change the seniority list. And, in fact, that probably would have been a bad thing for the reorganization. It would have added additional issues to American's effort to reorganize. That wouldn't have been helpful. And then, in light of the precedents that I mentioned from this court, harem and flight attendants for a union, those also show that it's reasonable for a union to avoid upending the seniority list when it can avoid it. Judge Pierce, do you have any questions? No questions. Mr. Rosenthal, so, just to focus for a second on the causation point, which you say or argue is dispositive. The argument I take it is that the fact that the APA going into the arbitration imposed this limitation on modifying the seniority list caused or significantly affected the arbitral result. And I'm not sure that's an argument that completely directly addresses that point. It's a very limited point, but potentially powerful. What's your response to that? Yes. So, I don't think we disagree with that. Krakowski won, which is the case where I said causation was dispositive. The case, as it ended up being presented, didn't involve the seniority limitation. The seniority limitation was an issue in Krakowski 2. So, in Krakowski 2, our argument is not based on causation. It's based on the plaintiff's failure to plead arbitrary, discriminatory, or bad faith conduct. That's it. Okay. That's helpful. And maybe I've misunderstood. I thought that with respect to Krakowski 2, it was that it was duplicative. That was dismissed on the grounds in part that it was duplicative of Krakowski 1. Is that right? Yes, that is right. So, it gets confusing because these cases overlap in various ways. Issues were raised in both of them. But, as I understand it, kind of as it's presented now on appeal, the plaintiffs are – I'm not sure they're disputing that it was duplicative, but they're arguing that basically they should have been allowed to pursue that claim that the seniority limitation was unfair regardless of the fact that it was raised in Krakowski 1. And we're – I'm responding to the merits of that and saying we disagree with that. We also think the bankruptcy court was well within its discretion to not consider it because of the duplication. Okay. Unless there are any other further questions from my colleagues, we'll hear from Mr. Robertson. Good morning, Your Honors. Mark Robertson on behalf of American Airlines. As appellants concede, absent a DFR claim, it is obviously not possible for American to collude in a DFR claim. Accordingly, if this court affirms the lower court's decisions as to APA, then the lower court's decisions as to American must also be affirmed. If this court were to reverse as to APA, however, it should still affirm as to American. In both Krakowski 1 and 2, in addition to finding that the collusion claim against American failed because the DFR claim failed, the bankruptcy court also held in both cases that the collusion claim against American failed for a separate independent reason. In Krakowski 1, the court concluded following extensive discovery that appellants failed to put forth any evidence at summary judgment that American colluded with the union. And in Krakowski 2, the court concluded that appellants failed to make any factual allegations in their complaint sufficient to give rise to a collusion claim. Now, in their opening brief to this court, appellants do not even directly challenge or even directly address the basis for the bankruptcy court's alternative holdings as to American. Indeed, in their 91-page opening brief, appellants devote a total of two paragraphs to American when addressing Krakowski 1 and four paragraphs when addressing Krakowski 2. Appellants have thus waived any argument challenging the bankruptcy court's alternative holdings as to American. But if not waived, as the bankruptcy court explained in some detail, absent a hybrid claim, which does not exist here, a plaintiff seeking to hold an employer liable preclusion must allege actual conduct by the employer evidencing bad faith, discrimination, or hostility towards the plaintiffs in connection with the union's alleged breach of its duty. In other words, a plaintiff must allege, and if the case proceeds, then come forward with facts to show collusion, which is, of course, logical. Judge LaValle or Judge Kius, do you have any follow-up questions of Mr. Robertson? No questions here. No questions. Mr. Robertson, I'm going to give you maybe 15 seconds to wrap up, and then we'll hear from Mr. Press. Certainly, I just really quickly that if mere complicity were all that required, as appellants argued below, it would be the equivalent of holding the employer vicariously liable for a union's breach of its DFR. And as numerous cases have held, this just simply makes no sense from a policy perspective because it would mean the employer is required to police and oversee the affairs of the union, which would put the employer in an impossible position. And every court to expressly address this issue has reached a similar conclusion, except the Ninth Circuit, which went a significant step further in a recent case where it addressed this issue in some detail and concluded there's no such thing as a collusion claim against an RLA employer. But thank you, Judge. Thank you very much, Mr. Robertson. Mr. Press, you've got two minutes. Thank you, Judge. The flight attendant and reunion case and the harem case, both of those cases are easily distinguished for one very important reason. There was no status quo in our case. Once the bankruptcy court abrogated this collective bargaining agreement, there was no status quo. So the APA was needing to enter into a new agreement and a new seniority list. And so that fact, the fact that there was no status quo, closes completely the loophole that got the APA off of – got them to avoid liability in 2001 when they imposed this unfair list, when they initially did what they did. They were not the representative of the TWA pilots. Their representation was to the American pilots only. That's four to 11 years, and they clearly have the duty of fair representation. They represent the whole bargaining unit. But they didn't do anything to correct what they had done 11 years later when they were free to do it. They just take the position, we could do it again. Well, that's not what the law says, that they have to fairly represent the entire group. And in recreating the seniority list, it should have been done in a fair way. As to the significance of the remedy limitation and the arbitration agreement, the significance of taking seniority off the table was said rather remarkably by APA's general counsel at the time, Ed James, in his email discussion when they were negotiating the arbitration agreement. And there was this internal debate about whether or not we have pilot committees, or do we have the union itself present the position? And this is what Mr. James, general counsel, said. APA versus AA, and we get an institutional position rather than invite the AA pilots to beat up on the TWA pilots without the latter being able to threaten to reopen the seniority list. So Mr. James is recognizing that if we set up this committee structure, it won't be fair unless the TWA pilots have this weapon, this weapon in this negotiation. Well, they didn't give the TWA pilots that weapon, and they did impose this committee structure where the much larger and stronger political group is beating up on the TWA pilots. So as to the causation point, APA's point about causation, they never briefed that in their motion for summary judgment, at least not according to the rules. They never negated causation. They never showed that there was no causation, and so there was no response to it in the plaintiff's opposition to summary judgment. And so that's the waiver there. There was no properly presented causation argument in the bankruptcy court. As to AA's argument, American Airlines' argument, we've set our case within the standards of the FARA decision of this court, and we did that adequately. I think we stated the claim. So if there's additional questions, I'm sorry. Well, Justice Duval, would you excuse me? Additional questions? No more questions. No questions. Okay. Mr. Press, thank you very much. All counsel, thank you. We'll reserve the decision. It's been very helpful.